**Joseph H. Strong, Administrator, Appellee, v. Armour & Company, Appellant.**

**Gen. No. 15,045.**

EVIDENCE—*competency of prior explosion.* In an action for personal injuries arising by virtue of an injury resulting from an explosion, *held,* competent to show that a prior explosion had occurred, upon the ground that such prior explosion tended to show that there were causes operating in the machines in question which might cause an explosion, of which fact in the exercise of ordinary care the master was bound to take notice.

Action in case for death cause by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed May 2, 1910. Rehearing denied May 16, 1910.

A. R. Urion and A. F. Reichmann, for appellant.

David K. Tone and Henry M. Ashton, for appellee.

Mr. Justice Freeman delivered the opinion of the court.

This is an action by the administrator to recover damages for personal injuries causing the death of one Fred Jackson, an employe of appellant. Judgment against the defendant was entered upon a verdict in favor of plaintiff, and from that judgment defendant appeals.

The declaration charges that defendant operated a refrigerating machine with coils and other appliances and negligently permitted liquid ammonia or some other liquid to accumulate in the cylinder of the compressor and negligently operated the refrigerating machine in that condition; and further that defendant negligently permitted a cylinder head of the compressor to be and remain in a defective, cracked, insecure, spongy and unsafe condition, so that it did not have sufficient strength to withstand the pressure of the gases and piston rod, and that as a result the cylinder head, while the compressor was being operated, was forced out by the pressure of gas and piston rod, discharging ammonia gas and liquid ammonia upon plaintiff's intestate, causing his death.

It is urged the evidence is not sufficient to support the verdict. The refrigerating plant forced anhydrous or pure ammonia gas in pipes along the walls of rooms in which defendant handled or kept meat and thus lowered the temperature. The circulation was maintained by a compressor in the power house, having a cylinder in which a piston operated, forcing the gas through a valve in the cylinder head and through the pipes. There is evidence tending to show that ammonia gas when suddenly released into the air, as in this instance, by the breaking of a cylinder head in which the gas is under pressure, causes a concussion

in the nature of an explosion; that if this gas in a dense condition is inhaled it burns or sears the surface of the lungs and will sometimes blister the exterior flesh. The deceased was a member of what is called a "rigging crew", and was not employed about the power house or its machinery. He had been sent by his foreman to get a rope hanging in the power house a few feet from the compressor in question. He had entered the power house and there is evidence tending to show he was standing near the cylinder reaching for the rope, when suddenly the cylinder head burst out and he was instantly enveloped with ammonia in gas and liquid form, causing his death.

It is urged at considerable length in behalf of defendant that the evidence does not justify the conclusion that the alleged pounding just before the accident in the cylinder which burst was due to the pressure of liquid ammonia; that it appears from the testimony of two of plaintiff's witnesses, "that this pounding did not necessarily indicate the presence of liquid in the machine but could be caused also by a saturated condition of the gas as distinguished from the presence of liquid." There is no question however the pounding did indicate that something was wrong in the cylinder, and in view of the evidence that there had been a former explosion of a cylinder it was a question for the jury whether it was negligence not to shut down until investigation could be made. We attach however less importance to the question as to the presence of liquid ammonia and oil in the cylinder than do counsel.

It is urged the court erred in admitting evidence of a prior breaking out of a cylinder head in the plant in June, 1902. The accident now in controversy occurred December 21, 1903. We do not concur in the contention that the admission of that evidence was erroneous. It did not necessarily tend to prove that the former explosion was caused by negligence. The evidence tended to show the fact that a cylinder head used for the same purpose in the plant had exploded

before. This was we think competent as tending to show there were causes operating in such machines which might cause an explosion of a cylinder, a fact of which in the exercise of ordinary care the defendant was bound to take notice. In Vol. 6, Thompson on Negligence, sec. 7779 (p. 712) it is said: "Evidence of similar accidents from the same cause though of slight probative value is sometimes admitted as tending to prove the dangerous character of the machine. The better rule allows such evidence on the question of the master's knowledge of the condition of an appliance and for that purpose only". In City of Bloomington v. Legg, 151 Ill. 9-13, it was said: "The court has held such evidence competent not for the purpose of showing independent acts of negligence, but as tending to show the common cause of these accidents is a dangerous, unsafe thing. Where an issue is made as to the safety of any machinery or work of man's construction which is for practical use, the manner in which it has served that purpose when put to that use would be a matter material to the issue, and ordinary experience of that practical use and the effect of such use bear upon such issue. It no more presents a collateral issue than any other evidence that calls for a reply which bears on the main issue. Such evidence is held competent by the weight of authority. (Citing cases.) The frequency of such accidents would create a presumption of knowledge and would be material to the question of diligence used to obviate the cause of injury". It may be added that a single prior accident such as the one now under consideration may suffice to raise a like question of diligence.

The second count of the declaration charged that defendant negligently permitted one of the heads of the cylinder to be and remain defective so that it could not withsand the pressure of the gases and the piston rod. There is evidence in defendant's behalf that the broken cylinder head was found after the explosion which caused the death of the plaintiff's intestate to

have been defective. There is testimony for plaintiff tending to show that there was perceptible external evidence of a defect which could be seen before the accident. If so, it was a question for the jury whether such appearance should have provoked careful examination of the cylinder head. It is testified on the other hand in behalf of defendant that no evidence of any defect could be seen on the outside, that the flaw on the inner side did not go through. There is conflict in the evidence on this point. But disregarding this evidence, it is conceded there was a serious defect in the cylinder head clearly visible on its inner side. This might apparently have been discovered had the head been removed and examined on both sides. Whether externally apparent or not, there is evidence in behalf of defendant tending to show that the defect admitted to exist explains the explosion. The flaw in the head was clearly perceptible on the inside of the cylinder head. As one witness for defendant states, the metal was spongy on the inside and when examined closely "it had a different color from the fresh piece broken off. The spongy part was darker than the other. I don't recollect how long it was; about, I should say, five or six inches anyway. * * * It was not through on the outside of the iron. It was about a thirty-second of an inch deep on the inside". Another of defendant's witnesses says: "You could see very plainly the defect in the head of the cylinder after the accident. It was perhaps four or five inches long, a spongy place, discolored. The holes might have been an eighth of an inch, just a spongy sort. Spongy and honeycombed is very similar. That was the defect in the head." There is other testimony to the same effect. The evidence as to a former cylinder head which broke in June, 1902, tended to show that when it broke there had been no pounding nor unusual noise preceding and that it was found to have become "a bad piece of steel, crystalized; that was what made it break off." A mechanical

engineer called as an expert in defendant's behalf testified that a casting like the cylinder head in controversy might break out as a result of the ordinary and usual operation of that machine and "the pressure to which it was subjected in that operation and use," because "being subjected to alternating high and low temperature on one side and being under constant temperature on the other side, the molecules of the iron have to arrange themselves every time the temperature goes though these different changes and in the rearranging so often, it would naturally deteriorate and become fatigued. And after awhile if the material is not strong enough it will break. *    * * With this casting coated with ice on the outside continuously *    *    * that will also tend to increase the chance of breaking. With these unequal temperatures on each side, the molecules of the iron on one side would remain almost dormant and on the other side in very active agitation, consequently the casting would tend to be destroyed and break;" and he adds: "These molecules get fatigued if the casting is good as well as bad." There is other testimony in behalf of defendant to the same effect. The witness Carlton L. Smith testifies that the accident in June, 1902, prior to the accident in controversy was caused because "the valve stem was crystalized and the valve broke off on the stem right at the neck on account of crystalization. The valve being in constant use, the iron crystalized;" and as to the cylinder head now in controversy he says he discovered "a spongy place in the head" after the accident that did not appear on the external surface. He also describes the effect of operation upon this cylinder head: "When the machine is in operation the head breathes, moves;" and he says the variation of pressure and change of temperature have to do with bringing about the weakened condition found in the cylinder head in controversy; that "after the use to which this casting was subjected and the condition in which I

found it, a casting in that condition would go out under normal pressure while in ordinary use and operation.''

It appears therefore that there is evidence tending to show the ordinary use of a cylinder head in the refrigerating. plant of defendant tended to produce a crystalization or spongy condition of the head, such that under normal pressure it would become liable to go out, as it did in the present instance. A prior accident of the same character from similar conditions had shown the possibility and the cause. The evidence tends to show this cause to be a constant source of danger, and in the case of the cylinder head in controversy shows also the existence of an interior flaw which an examination might have disclosed. Under this evidence the question whether defendant was negligent in not having ascertained the danger in the case of the cylinder head, the explosion of which caused the injury complained of, was we think, clearly for the jury, and there is evidence from which they might properly find against defendant on that issue, as they did.

There are other questions argued at length in the briefs, and it may be, as defendant urges, that there are minor errors in procedure. But we find none that in our opinion are such as to warrant a reversal of the judgment. It will therefore be affirmed.

*Affirmed.*